[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-13444

Non-Argument Calendar

_____

SHELIA GRAY,

Plaintiff-Appellant,

*versus*

BOARD OF TRUSTEES OF THE GEORGIA MILITARY
COLLEGE, The,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 5:21-cv-00052-MTT

_____

Before ROSENBAUM, JILL PRYOR, and BRASHER, Circuit Judges.

PER CURIAM:

After Shelia Gray was terminated from her position as an administrative assistant at Georgia Military College, she sued the school's Board of Trustees, bringing claims under Title VII of the Civil Rights Act for race discrimination, 42 U.S.C. § 2000e-2(a)(1), and retaliation, 42 U.S.C. § 2000e-3(a). The district court granted summary judgment to the Board, and Gray appealed. After careful consideration, we affirm.

## I.

Gray, an African American woman, began working for Georgia Military College in 2015. In 2018, she was promoted to the position of administrative assistant in the school's human resources department. Her responsibilities included answering phone calls, greeting visitors, scanning personnel records for new hires and terminated employees, processing purchase orders, and completing employment verification forms. In 2020, Gray was one of seven full-time employees in the human resources department. She was the only African American employee in the department; all the other employees were white.

In late March 2020, in response to the COVID-19 pandemic, the school shifted all its employees to remote work. On June 1, the school had its employees return to campus. It encouraged them to use masks and practice social distancing while at work, but it did not require them to do so.

Around the time the employees returned to work, there was a public outcry across the nation over the killing of George Floyd. Christy Lewis, a white woman who worked in another department at the school, posted on social media an inflammatory comment about the protests. She wrote, "Bring back the hoses and release the dogs," referencing the violence that law enforcement officers had unleashed on civil rights protestors in the 1960s. Doc. 70-7 at 1.[1]

Gray and others complained to the school about Lewis's social media post. Gray initially contacted Jill Robbins, the vice president of human resources, about the post. Robbins told Gray that the school could not take any action in response to an employee's personal use of social media.

The next day, Jim Watkins, the school's chief financial officer, addressed the school's employees about Lewis's social media post. He announced that Lewis no longer worked for the school. After the meeting, Gray approached Watkins. She told him that she was offended by Lewis's post. But Watkins refused to discuss it with her.

Gray also told Watkins that she was concerned about her health because other employees were refusing to wear masks or practice social distancing. Watkins responded that if Gray felt uncomfortable, she should take leave or quit.

---

[1] "Doc." numbers refer to the district court's docket entries.

Even before the COVID pandemic, the school was experiencing budgetary problems due to declining revenues. The pandemic exacerbated the school's financial problems. To cut costs, the school began planning in April 2020 to implement a reduction in force. The school's president asked each department to eliminate at least one position.

Robbins decided that the human resources department would eliminate the administrative assistant position held by Gray. Robbins selected this position because its responsibilities "were the easiest for the [d]epartment to absorb." Doc. 59-7 at 13. This was because most of the other employees in the department had previously held the position or a similar one.

On June 30, Gray was told that her position had been eliminated as part of the reduction in force. She was one of ten employees whose positions were eliminated. She was the only African American employee who lost her job as part of the reduction in force. All the other terminated employees were white.

On the same day that she was terminated, Gray applied for other positions with the school. She submitted applications for the positions of admissions assistant and academic success coach. She was not hired for either position. The school chose a different applicant, who was African American, to fill the admissions assistant position. And shortly after posting the position for academic success coach, the school decided not to fill it and did not review the applications it received for the position. Instead, it reposted and filled the position the next year.

Gray, proceeding *pro se*, submitted a charge of discrimination to the Equal Employment Opportunity Commission ("EEOC"). In her charge, she reported that the discrimination had occurred on June 30, 2020. She checked boxes indicating that she had been discriminated against because of her race and age. She did not check a box indicating that retaliation had occurred. In her description of the discrimination, she stated that she had been "subjected to a hostile work environment" and was told that she was being terminated because of budget cuts. Doc. 10-1 at 1.

A few months later, Gray, through her attorney, submitted a second charge of discrimination to the EEOC. In this charge, she alleged that she had been discriminated and retaliated against because of a disability. Gray reported that she suffered from heart disease, which put her at a higher risk of developing serious complications from COVID-19. According to the charge, Gray requested several accommodations from the school, including that other employees be required to wear masks. She alleged that the school denied her accommodation request and then terminated her in retaliation for seeking a reasonable accommodation for a disability.

After receiving right-to-sue letters from the EEOC, Gray sued the Board. She raised several claims, including claims under

Title VII of the Civil Rights Act for race discrimination and retaliation.[2]

The Board filed an answer and moved for partial judgment on the pleadings. It argued, among other things, that Gray's Title VII retaliation claim should be dismissed because she failed to raise it in her EEOC charges and thus failed to exhaust her administrative remedies. The Board attached some exhibits to its motion.

Because the Board relied on matters outside the pleadings, the district court converted the motion for judgment on the pleadings to a motion for summary judgment. It then gave the parties an opportunity to perform discovery related to exhaustion and submit additional briefing.[3] After the parties completed discovery and submitted supplemental briefs, the court granted summary judgment to the Board on the Title VII retaliation claim, concluding that Gray failed to raise this claim before the EEOC and thus had not exhausted her administrative remedies.[4]

---

[2] Gray also brought claims for age discrimination and disability discrimination. Because there are no issues related to those claims before us in this appeal, we discuss them no further.

[3] The court acknowledged that it generally could consider facts outside the pleadings in evaluating an exhaustion defense without converting a motion for judgment on the pleadings to a motion for summary judgment. But the court concluded that the record was "too unclear" to resolve the motion for judgment on the pleadings without additional discovery and supplemental briefing. Doc. 23 at 1 n.1.

[4] After the court issued its decision, Gray filed multiple motions for reconsideration. The district court denied these motions.

After the parties completed discovery, the Board moved for summary judgment on Gray's race discrimination claim. The district court granted the motion, concluding that no reasonable jury could find that the Board acted with a discriminatory intent when terminating Gray.

In its summary judgment order, the district court relied on the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The court concluded that Gray failed to establish a prima facie case of discrimination. Alternatively, even if Gray had established a prima facie case of discrimination, the district court concluded, the Board would still be entitled to summary judgment under the *McDonnell Douglas* framework. The court determined that the Board had advanced legitimate, nondiscriminatory reasons for terminating Gray. The court noted that it was undisputed that the reduction in force "was a consequence of [the school's] financial stress." Doc. 76 at 16. And the Board had explained that Gray's position was eliminated as part of the reduction in force because her job responsibilities were the easiest for other employees in the human resources department to absorb.

The court concluded that Gray had failed to rebut the Board's nondiscriminatory reasons for her termination. It noted that Gray had made "little effort" to show that the Board's reasons were a pretext for discrimination. *Id.* at 17. Instead, she had simply "state[d] the Board's . . . reasons do not appear to be legitimate."

*Id.* (internal quotation marks omitted). The court concluded that she had failed to establish pretext.

The district court acknowledged that an employee also may survive summary judgment in an employment discrimination case by coming forward with a convincing mosaic of circumstantial evidence that would allow a jury to find intentional discrimination. The court concluded that Gray failed to come forward with sufficient evidence to create a convincing mosaic.

This is Gray's appeal.

## II.

We review *de novo* a district court's grant of summary judgment, viewing all evidence and drawing all reasonable inferences in favor of the nonmoving party. *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1293 (11th Cir. 2006). Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## III.

On appeal, Gray challenges the district court's summary judgment orders on her Title VII claims alleging that the Board terminated her because of her race and in retaliation for engaging in protected activity. We discuss each claim in turn.

## A.

Title VII prohibits an employer from intentionally discriminating against an employee based on her race. *See* 42 U.S.C.

§ 2000e-2(a)(1). To prevail on a discrimination claim, an employee must establish, among other things, the employer's discriminatory intent. *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 920 (11th Cir. 2018).

To establish intent, a plaintiff may use either direct or circumstantial evidence. *Id.* "Direct evidence is evidence that, if believed, proves the existence of discriminatory intent without inference or presumption." *Id.* at 921 (alterations adopted) (internal quotation marks omitted). "In contrast, circumstantial evidence only suggests, but does not prove, a discriminatory motive[.]" *Id.* at 921–22 (internal quotation marks omitted). When a plaintiff relies on circumstantial evidence, she may establish that the defendant acted with discriminatory intent by satisfying the burden-shifting framework set out in *McDonnell Douglas*. *See Lewis v. City of Union City*, 918 F.3d 1213, 1220 (11th Cir. 2019) (en banc).

Here, Gray relied on circumstantial evidence only. She argues that she introduced sufficient evidence of intentional discrimination to survive summary judgment under the *McDonnell Douglas* framework. We disagree.

Under the *McDonnell Douglas* framework, a plaintiff must first establish a prima facie case of discrimination. *Lewis*, 918 F.3d at 1220. To establish a prima facie case in a reduction-in-force scenario, the employee must show that (1) she belonged to a protected class, (2) she was subjected to an adverse employment action, (3) she was "qualified to assume another position at the time of discharge," and (4) there is evidence "from which a factfinder might reasonably conclude that the employer intended to

discriminate in reaching the decision at issue." *Rowell v. BellSouth Corp.*, 433 F.3d 794, 798 (11th Cir. 2005) (internal quotation marks omitted). To satisfy the fourth prong, the plaintiff's evidence "must lead the factfinder reasonably to conclude either that the defendant (1) consciously refused to consider retaining or relocating a plaintiff because of [her race], or (2) regarded [race] as a negative factor in such consideration." *Id.* (internal quotation marks omitted).

If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to "articulate a legitimate, nondiscriminatory reason for its actions." *Lewis*, 918 F.3d at 1221. If the defendant carries this burden, the "plaintiff must then demonstrate that the defendant's proffered reason was merely a pretext for unlawful discrimination." *Id.*

To establish pretext, the plaintiff "must present significant probative evidence sufficient to permit a reasonable fact finder to conclude that the discriminatory animus was the but-for cause of the adverse employment action." *Owens v. Governor's Off. of Student Achievement*, 52 F.4th 1327, 1338 (11th Cir. 2022) (internal quotation marks and citation omitted). The evidence must show "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Id.* (internal quotation marks omitted). When considering pretext, we "do not sit as a super-personnel department that reexamines an entity's business decisions." *Id.* (internal quotation marks omitted). A court may not "find pretext by simply quarreling

with the wisdom" of the employer's reasons. *Id.* (internal quotation marks omitted).

Establishing the *McDonnell Douglas* elements "is not, and never was intended to be, the *sine qua non* for a plaintiff to survive a summary judgment motion in an employment discrimination case." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). A plaintiff also may defeat a summary judgment motion by presenting a "convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Id.* Evidence that may establish a "convincing mosaic" includes, but is not limited to, the following: (1) "evidence of suspicious timing, ambiguous statements, or other information from which unlawful intent might be inferred;" (2) "evidence of systematically better treatment of similarly situated employees;" or (3) "evidence that the employer's justification for its action is pretextual." *Berry v. Crestwood Healthcare LP*, 84 F.4th 1300, 1311 (11th Cir. 2023).

We recently explained that the *McDonnell Douglas* framework and the convincing mosaic theory "are two ways to approach the same question: whether the plaintiff has put forward enough evidence for a reasonable jury to conclude that illegal discrimination occurred." *McCreight v. AuburnBank*, 117 F.4th 1322, 1334 (11th Cir. 2024). Regardless of whether a court is considering the plaintiff's evidence of "pretext" or her "convincing mosaic" evidence, the inquiry is "the same" because the court is focused on "whether a reasonable jury could infer illegal discrimination." *Id.* at 1335.

Here, under the *McDonnell Douglas* framework, even assuming Gray established a prima facie case of discrimination, the district court did not err in granting summary judgment because she failed to show that the Board's legitimate, nondiscriminatory reasons for eliminating her position were pretextual. That is, she failed to come forward with sufficient evidence to allow a reasonable jury to conclude that she was terminated because of her race.

The Board advanced legitimate, nondiscriminatory reasons for terminating Gray. It explained that it was required to undertake a reduction in force and eliminate positions because of a budget shortfall. As part of the reduction in force, each department was required to eliminate one position. Gray's position was eliminated from the human resources department because her job responsibilities were the easiest for the remaining employees to absorb.

Gray argues that the Board's stated reasons were merely a pretext for discrimination. She questions whether a reduction in force was necessary. She points out that about two months after her termination, the school hired an admissions assistant. She also notes that in February 2023, more than two years after the reduction in force, the school had posted approximately 190 job openings. But the fact that the school sought to hire additional employees after the reduction in force does not call into question that Gray was terminated as part of a reduction in force in which the Board eliminated ten jobs at the school.

Gray also asserts that she came forward with evidence showing that the school decided to terminate her position in the

reduction in force because of her race. She says that her position was "not actually the easiest in the [human resources] department to absorb." Appellant's Br. 46. But she has no evidence to support this assertion. She points to a statement in which a coworker expressed concern that eliminating Gray's position meant the remaining employees would have to perform more work. But any reduction in force would require the remaining employees to absorb the work that had been performed by the employee whose position was eliminated. Nothing in the coworker's statement calls into question the Board's decision that if a position in the human resources department had to be eliminated, it was least burdensome on the remaining employees to eliminate the administrative assistant position held by Gray.[5] Gray's challenge to the school's decision to eliminate her position boils down to a quarrel with a business decision about how best to organize and operate the human resources department; it does not establish pretext. *See Owens*, 52 F.4th at 1338.

Gray argues that she came forward with evidence of pretext because, after she was terminated, she applied for two other positions—admissions assistant and academic success coach—and was

---

[5] Gray also says that a reasonable factfinder could find the Board's proffered reasons to be pretextual because of how she was treated "in the months prior to the termination." Appellant's Br. 47–48. In her appellate brief, she cites only to allegations in her complaint about how she was treated. But to defeat a summary judgment motion, a plaintiff must supply evidence; "unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005).

not selected for either position. It is true that the Board did not se-
lect Gray to fill the admissions assistant position. But the school
ultimately hired an African American person to fill that role. And
shortly after posting the position for the academic success coach,
the school decided not to fill it and did not review any applications
until it reopened the position the following year. Given the record
before us, Gray failed to show that the Board fired her because of
her race. The Board thus was entitled to summary judgment on
her discrimination claim.

## B.

Gray also argues on appeal that the district court erred in
granting summary judgment to the Board on her Title VII retalia-
tion claim in which she alleged that she was terminated because
she complained about Lewis's social media post. The district court
concluded that the Board was entitled to summary judgment on
this claim because Gray failed to raise it before the EEOC and thus
had not exhausted her administrative remedies.

We need not address whether the district court erred in con-
cluding that Gray failed to exhaust her administrative remedies.
Even if she had exhausted her administrative remedies, the Board
was entitled to summary judgment under the *McDonnell Douglas*
framework. *See Hill v. Emp. Benefits Admin. Comm. of Mueller Grp.
LLC*, 971 F.3d 1321, 1325 (11th Cir. 2020) ("We may affirm for any

reason supported by the record, even if not relied upon by the district court." (internal quotation marks omitted)).[6]

Title VII prohibits an employer from retaliating against an employee who engages in protected conduct. *See* 42 U.S.C. § 2000e-3(a). When, as here, a plaintiff's retaliation claim is based on circumstantial evidence, we often look to the *McDonnell Douglas* burden-shifting framework. *Tolar v. Bradley Arant Boult Commings, LLP*, 997 F.3d 1280, 1289 (11th Cir. 2021). And, as with a discrimination claim, a plaintiff may survive summary judgment on a retaliation claim by coming forward with a "convincing mosaic" of circumstantial evidence supporting an inference of retaliation. *Berry*, 84 F.4th at 1307.

Under the *McDonnell Douglas* framework, to establish a prima facie case of retaliation, a plaintiff must show that (1) "she engaged in statutorily protected activity," (2) "she suffered an adverse [employment] action," and (3) "the adverse action was causally related to the protected activity." *Patterson v. Ga. Pac., LLC*, 38 F.4th 1336, 1345 (11th Cir. 2022) (internal quotation marks omitted). To demonstrate a causal connection for purposes of the prima facie case, the plaintiff must show that (1) the decisionmaker knew of her protected activity and (2) the protected activity and adverse

---

[6] We note that although the district court did not reach the merits of the retaliation claim, on appeal Gray argues that she introduced sufficient evidence for her retaliation claim to survive summary judgment under the *McDonnell Douglas* framework.

action were not wholly unrelated. *Shannon v. Bellsouth Telecomms., Inc.*, 292 F.3d 712, 716 (11th Cir. 2002).

If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to articulate a legitimate, nonretaliatory reason for its action. *See Patterson*, 38 F.4th at 1345. If the defendant carries this burden, the "plaintiff must show that each reason is merely a pretext and that the real reason was retaliation." *Id.*

Here, even assuming that Gray established a prima facie case of retaliation, the Board was entitled to summary judgment nonetheless. As we explained above, the Board has advanced legitimate, nonretaliatory reasons for why it terminated Gray. The school, facing budgetary problems, undertook a reduction in force. Gray's position was selected for elimination because her job responsibilities could most easily be absorbed by the remaining members of the human resources department. And she has provided no evidence showing that the Board's reasons were merely a pretext.

Gray advances one pretext argument that is specific to her retaliation claim, however. She says that because "merely four weeks" passed between her complaints about Lewis's social media post and her termination, a reasonable factfinder could conclude that the Board's proffered reason was a pretext and that it terminated her in retaliation. Appellant's Br. 47. But the record shows that the school began planning to implement the reduction in force in April 2020, which was before Gray engaged in her protected conduct. We simply cannot say that the temporal relationship between Gray's protected activity and her termination is enough to allow a

reasonable jury to infer that she was terminated in retaliation for her protected activity. *See Walden v. Ctrs. for Disease Control & Prevention*, 669 F.3d 1277, 1290 (11th Cir. 2012) (concluding that "close temporal proximity of three weeks" between the employee's "protected activity and [the] . . . adverse employment action" was not enough to establish pretext when the employer supplied a legitimate reason for the adverse action), *abrogated on other grounds by EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768 (2015).

## IV.

For the reasons given above, we affirm the judgment of the district court.

**AFFIRMED.**